**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:21-CV-00356-RGJ-CHL**

**OWNERS INSURANCE COMPANY,**                                             **Plaintiff,**

**v.**

**REYNOLDS CONCRETE PUMPING, LLC, et al.,**                   **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is the Motion to Compel Production of An Unredacted Copy of the Examination Under Oath of Matthew Recktenwald filed by Defendants Sampson Lewis and Cheree Lewis (collectively the "Lewis Defendants"). (DN 29.) Defendant Reynolds Concrete Pumping, LLC ("Reynolds") and Plaintiff Owners Insurance Company ("Owners") filed responses, and the Lewis Defendants filed a reply. (DNs 31, 32, 34.) The Court ordered the Parties to file supplemental briefs regarding whether federal law applies to any waiver analysis, and all three Parties have done so. (DNs 37, 38, 39, 40.) The Court also ordered Reynolds to produce an unredacted copy of the Examination Under Oath for an *in camera* review (DN 37), and Reynolds has done so. Therefore, this matter is ripe for review.

**I.    BACKGROUND**

The instant declaratory judgment action filed by Owners relates to an August 6, 2020, accident involving a concrete pump vehicle operated by Matthew Recktenwald ("Recktenwald") on behalf of his employer Reynolds. (DN 1.) Recktenwald was originally a party to this action but was subsequently dismissed by Owners. (*Id.*; DNs 21, 23.) The accident itself is the subject of a separate tort action in Jefferson Circuit Court by the Lewis Defendants in which they allege that Sampson Lewis was injured by the negligence of Reynolds and/or Recktenwald and that

Cheree Lewis, his spouse, suffered loss of spousal consortium. (DN 29, at PageID # 375-76.) In the instant action, Owners, which issued a Commercial Auto Policy to Reynolds, seeks a declaration that it owes neither coverage nor a defense to Reynolds for losses related to the accident and the injuries of the Lewis Defendants.[1] (DN 1.)

As is relevant to the instant dispute, prior to the filing of either the state court tort action or the instant action, on December 2, 2020, counsel for Owners examined Recktenwald under oath (the "EUO").[2] (DN 29, at PageID # 376; DN 29-3.) The state court tort action was filed on May 21, 2021, and the instant action was filed on June 1, 2021. (DN 1; *Lewis v. Reynolds Concrete Pumping LLC*, No. 21-CI-002975, Jefferson Circuit Court, Jefferson County, Kentucky (filed May 21, 2021).) Owners subsequently advised the Parties that it intended to file a motion for summary judgment in this case relying on the EUO, which prompted the Lewis Defendants to request a copy of it. (DN 29, at PageID # 376.) The Parties have tendered their e-mail correspondence related to this issue, and a detailed recitation of the same is relevant to the Court's analysis below. The e-mails below are all between Derek P. O'Bryan ("O'Bryan"), counsel for the Lewis Defendants; David K. Barnes ("Barnes"), counsel for Owners; and T. Brian Lowder ("Lowder"), counsel for Reynolds. In relevant part, the conversation between the three attorneys related to the EUO proceeded as follows:

    June 22, 2022, 5:12 PM    O'Bryan:    When will you send over the EUO?

---

[1] Initially, The Cincinnati Insurance Company ("CIC") attempted to intervene in this action to seek a declaration as to whether it owed a duty to defend or indemnify Reynolds with regard to the Lewis Defendants claims under the terms of commercial general liability and umbrella liability parts of a "Common Policy" of insurance it issued to Reynolds. (DN 7.) The Court denied that motion. (DN 10.) CIC filed a separate action against Reynolds, the Lewis Defendants, and Owners in this Court. *The Cincinnati Ins. Co. v. Reynolds Concrete Pumping, LLC, et al.*, No. 3:22-cv-143-DJH (W.D. Ky. filed Mar. 10, 2022). CIC subsequently filed a Motion to Consolidate that action with the instant action, and its motion remains pending before the Court. DN 20, *The Cincinnati Ins. Co. v. Reynolds Concrete Pumping, LLC, et al.*, No. 3:22-cv-143-DJH (W.D. Ky. filed Jan. 27, 2023).

[2] Under the relevant language of the policy, Owners was under no duty to provide coverage unless its insured, Reynolds, fully complied with certain duties set forth in the policy including that "the insured . . . [a]gree to examinations under oath at [Owners's] request and give [Owners] a signed statement of such answers." (DN 1-1, at PageID # 57.)

2

| | | |
|---|---|---|
| June 22, 2022, 5:14 PM | Barnes: | I provided the EUO transcript to [Lowder], since it is of his client's employee. As soon as he has authority to "green light" it, I will send it over. |
| August 15, 2022, 1:06 PM | O'Bryan: | Can one of you please send me the EUO? |
| August 16, 2022, 11:50 AM | O'Bryan: | Following up on this again. Can one of you please send me the EUO? |
| August 16, 2022, 1:48 PM | Lowder: | On behalf of Reynolds Concrete, I objected to the production of the entire EUO as it contains statements that are outside the scope of the declaratory judgment issue. In addition, the EUO falls within the realm of attorney/client privilege. However, we agreed to the production of a redacted EUO transcript on condition that Plaintiffs' [*sic*] acknowledge that there is no waiver of the privilege and that plaintiff's counsel will not argue such. If [y]ou are in agreement to the foregoing, Reynolds does not have an objection to the redacted EUO being produced. |
| August 16, 2022, 2:38 PM | O'Bryan: | Since I represent a party to this case who has an interest in this case, I believe I have a right to the entire EUO, especially in light of the fact, it is going to be used as authority for a MSJ by Auto Owners. I also do not understand how there could be an attorney client privilege since Auto Owners is adverse to your client and the examination was taken under oath. If you will not agree to forward the E[UO] unredacted, I will need to contact Judge Lindsay to set a conference to discuss the issue. Please advise if you will forward it unredacted or if I will need to contact Judge Lindsay. Thanks for letting me know so I can take the next step. |
| August 16, 2022, 3:48 PM | Lowder: | We cannot agree to the un-redacted EUO being produced. Reynolds produced its employee for the EUO pursuant to the terms of its liability insurance policy. Statements |

3

|  |  |  | provided to an insurer during the pendency of a claim are privileged. Although portions of the EUO are germane to the issue of coverage, there were additional questions asked that are not. It is not Reynolds that is seeking to utilize the EUO in the declaratory judgment action, it is Owners. I understand Plaintiff's desire to discover the EUO in its entirety but we cannot agree to that. Thus, it appears we will need to have a conference with Judge Lindsay to sort this out. |
|---|---|---|---|
| August 16, 2022, 3:53 PM | | O'Bryan: | Ok. Thanks. |
| August 16, 2022, 4:09 PM | | Barnes: | I would suggest we provide you with the EUO, as redacted and approved by [Lowder], and see if that is satisfactory. If not, we will likely need to involve the Judge. Let me know your thoughts. |
| August 16, 2022, 4:12 PM | | O'Bryan: | Ok – please send with redactions and I will take a look. |

(DN 29-4, at PageID # 401-05.) Notably, while counsel for the Lewis Defendants agreed to look at the redacted transcript, he did not agree to refrain from arguing waiver as requested by counsel for Reynolds.[3] (*Id.*) The redacted transcript produced to the Lewis Defendants was thirty-two pages in total and contained partial redactions to eight pages of testimony and total redactions to three pages of testimony. (DN 29-3.) Without counting the title and introductory pages, the transcript contained a total of 716 lines of testimony of which 195 were redacted. (*Id.*) Thus, approximately 27% of the total testimony during the EUO was redacted. (*Id.*) The Court has conducted an *in camera* review of the redacted testimony.

---

[3] The Court finds that references in the e-mail correspondence to "Plaintiffs' counsel" were actually references to counsel for the Lewis Defendants in this action as the Lewis Defendants are Plaintiffs in the Jefferson Circuit Court action. Any other construction would result in a nonsensical interpretation of the conversation given that the only other plaintiff who could be being referenced is Owners, who has taken no position regarding the EUO.

As production of the redacted transcript did not resolve their dispute, the Parties raised it during a telephonic status conference with the undersigned on September 21, 2022. (DN 28.) The undersigned directed them to continue attempting to resolve their differences without Court intervention but granted leave for the filing of a discovery motion if necessary. (*Id.*) The Parties were unable to resolve their dispute, and the Lewis Defendants filed the instant motion to compel. (DN 29; DN 29-4, at PageID # 395-96.) Subsequent to the filing of the motion to compel, Owners filed its motion for summary judgment and attached the redacted EUO of Recktenwald in support of the same. (DNs 33, 33-2.) Owners did not seek to provide the Court with an unredacted copy of the EUO in support of its motion; instead, it relied only on the information in the redacted version in support of its arguments. (*Id.*)

In their Motion to Compel, the Lewis Defendants argued that the EUO was not covered by the attorney-client privilege and that even if it was, any privilege was waived by production of the redacted version of the EUO. (DN 29.) In its response, Owners took the position that it had not refused to produce anything and was instead leaving the matter to its insured, Reynolds, and the Court. (DN 32.) In its response, Reynolds argued that the EUO was covered by the attorney-client privilege and that the partial disclosure did not constitute a waiver in view of its specific statements to the contrary in the Parties' e-mail discussions. (DN 31.) In their reply, the Lewis Defendants maintained their initial position. (DN 34.) In supplemental briefing ordered by the Court on the waiver issue, the Parties largely maintained their initial positions regarding waiver but based the same on federal law, which all Parties agreed applied. (DNs 38, 39, 40.) Reynolds also argued that the Court should read an enforceable agreement under Fed. R. Evid. 502(e) regarding the lack of any waiver in the e-mail correspondence quoted above and/or should find any disclosure inadvertent under Fed. R. Evid. 502(b). (DN 38.) These issues are now ripe for the Court's review.

## II.   DISCUSSION

### A.   Attorney-Client Privilege

Reynolds contended that the EUO of its employee was covered by the attorney-client privilege. (DN 31, at PageID # 412-14.) Because the Parties have invoked the Court's diversity jurisdiction, this Court applies Kentucky law to the applicability of the attorney-client privilege.[4] *In re Powerhouse Licensing,* LLC, 441 F.3d 467, 472 (6th Cir. 2006); Fed. R. Evid. 501. Kentucky's attorney-client privilege is set forth in the Kentucky Rules of Evidence. *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000); Ky. R. Evid. 503. It protects confidential communications made "for the purpose of facilitating the rendition of professional legal services" if those communications are between the individuals identified in the Rule. Ky. R. Evid. 503(b). The Rule specifies that the communications must be:

> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> (2) Between the lawyer and a representative of the lawyer;
>
> (3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
>
> (4) Between representatives of the client or between the client and a representative of the client; or
>
> (5) Among lawyers and their representatives representing the same client.

*Id.* The applicability of the privilege to a particular communication "depends . . . on the facts and circumstances under which the communication was made." *Lexington Pub. Libr. v. Clark*, 90 S.W.3d 53, 59 (Ky. 2002). The burden to establish the privilege is on the party claiming the

---

[4] Owners brought suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which "does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists." *One Beacon Ins. Co. v. Chiusolo*, 295 F. App'x 771, 775 (6th Cir. 2008) (citing *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)). Here, the Parties have asserted diversity of citizenship as the basis for this Court's jurisdiction. (DN 1, at ¶¶ 1-5.)

privilege, who "must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts." *Collins v. Braden*, 384 S.W.3d 154, 164-65 (Ky. 2012).

While an insurer is not one of the Parties listed in Ky. R. Evid. 503(b), as cited by the Parties, in *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979), the Kentucky Supreme Court "extended the scope of the attorney-client privilege . . . to include communications between an insured and a representative of his insurer." *Haney*, 40 S.W.3d at 354 (citing *Asbury*, 589 S.W.2d at 216). In *Asbury*, the Kentucky Supreme Court affirmed the holding of the Kentucky Court of Appeals that attorney-client privilege protected a recorded statement that defendant gave her insurer such that the plaintiff in a subsequent action regarding an automobile accident could not get a copy of the statement in discovery. *Asbury*, 589 S.W.2d at 216. "In holding the statement privileged, th[e] [c]ourt relied upon a provision in the defendant's insurance policy—a contract between insured and insurer—which required the defendant to cooperate with the insurance company and obligated the insurer to provide counsel." *Haney*, 40 S.W.3d at 354. The court reasoned as follows:

> "The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." We think this conclusion makes good sense. When a person has had an automobile accident that may result in litigation he would normally confide in counsel. If, however, he is insured, he has paid an insurance company to exercise that choice for him. He should not be penalized for his prudence in that respect.

*Asbury*, 589 S.W.2d at 217 (quoting *People v. Ryan*, 197 N.E.2d 15, 17 (1964)). However, the Kentucky Supreme Court subsequently clarified that *Asbury*'s holding was limited to "when the insurance policy requires cooperation with respect to potential litigation as a condition of

7

coverage." *Haney*, 40 S.W.3d at 354. In doing so, the Kentucky Supreme Court reaffirmed that parties should be able to discover any matters that are not privileged, the burden is on the asserting party to prove the applicability of an asserted privilege, and "privileges should be strictly construed, because they contravene the fundamental principle that 'the . . . public has a right to every man's evidence.' " *Id.* at 355 (quoting *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 469 (Ky. 1998)). Thus, the Kentucky Supreme Court refused to extend *Asbury*'s holding to a case where an individual gave a statement to his employer's safety department and the employer was self-insured. *Id.* at 354-56.

Here, the Lewis Defendants argued that *Asbury* does not apply because Owners and Reynolds are adverse to each other such that "it cannot be said that the EUO was a communication made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." (DN 29, at PageID # 379.) The Lewis Defendants argued that this distinction from the facts of *Asbury* rendered the entire EUO in this case unprivileged. Despite taking this position, the Lewis Defendants offered no case law supporting their interpretation of *Asbury*'s requirements. There appear to have been relatively few cases applying *Asbury* since it was decided in 1979. Based on the Court's review of those cases, no Kentucky court has limited or applied *Asbury* in the fashion propounded by the Lewis Defendants, and no Kentucky federal court has made an "*Erie* guess" that a Kentucky court would do so.[5] In

---

[5] *See Haney*, 40 S.W.3d at 353-56; *Commonwealth v. Melear*, 638 S.W.2d 290, 290-91 (Ky. Ct. App. 1982); *Mohrmeyer v. Wal-Mart Stores E., L.P.*, No. CV 09-69-WOB, 2010 WL 11646859, at *2 (E.D. Ky. Mar. 12, 2010); *Lee v. Med. Protective Co.*, No. 10-CV-123-WOB-CJS, 2011 WL 13156819, at *1 n.1 (E.D. Ky. Sept. 30, 2011); *Lee v. Med. Protective Co.*, 858 F. Supp. 2d 803, 805 (E.D. Ky. 2012); *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-R, 2012 WL 3644817, at *4-6 (W.D. Ky. Aug. 24, 2012); *Fiser v. Proassurance Cas. Co.*, No. CV 10-280-WOB-CJS, 2012 WL 13040074, at *2 n.3 (E.D. Ky. Sept. 30, 2012); *United Parcel Serv., Inc. v. Air Transp. Int'l, LLC*, No. 3:12-CV-561-DJH, 2015 WL 13638408, at *9 (W.D. Ky. Apr. 29, 2015); *Young v. Chapman*, No. 3:14-CV-666-JHM-CHL, 2016 WL 1717226, at *3-5 (W.D. Ky. Apr. 28, 2016); *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 3417486, at *2 (W.D. Ky. May 26, 2015); *Certain Underwriters at Lloyd's v. Morrow*, No. 1:16-CV-00180-GNS, 2017 WL 4532240, at *3-4 (W.D. Ky. Oct. 10, 2017).

the absence of such authority, the Court is bound to apply stated Kentucky law as set forth in *Asbury* and *Haney*. Here, the relevant insurance policy contained a requirement that Reynolds cooperate and submit to an examination under oath as a condition of coverage. Thus, under *Asbury*, the attorney-client privilege applies to shield the EUO from disclosure unless there has been a waiver.

**B.     Waiver**

The Parties' initial briefs applied Kentucky law regarding any potential waiver of attorney-client privilege. (DNs 29, 31, 34.) However, federal law can govern waiver in a diversity case "even if state law provides the rule of decision." Fed. R. Evid. 502(f); *Pinnacle Sur. Servs., Inc. v. Manion Stigger, LLP*, 370 F. Supp. 3d 745, 750-51 (W.D. Ky. 2019); *Lee*, 858 F. Supp. 2d at 807. Federal law governs only when "disclosure" of the privileged communication is made, whether intentional or inadvertent, "in a federal proceeding." Fed. R. Evid. 502(a)-(b). As the disclosure at issue of the redacted EUO was made in this federal proceeding, it appeared probable to the Court that federal law should apply. Therefore, the Court directed the Parties to file supplemental briefs regarding whether waiver was governed by federal law and if so, to clarify their respective positions regarding the waiver analysis under federal law. (DN 37.) All Parties agreed that federal law applied. (DNs 38, 39, 40.) The Court now holds that federal law does apply because the disclosure of the EUO was made in a federal proceeding. Thus, the Court must determine whether Owners has waived its attorney-client privilege under applicable federal law as to the redacted portions of the EUO by producing a redacted copy of the EUO in this action.

Regarding the criteria for waiver, Fed. R. Evid. 502(a) provides:

(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product

> protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
>> (1) the waiver is intentional;
>>
>> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>>
>> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). The Advisory Committee notes to the Rule make clear that the rule is intended to govern and limit the application of subject matter waiver for disclosures made in federal proceedings:

> The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. . . . Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner. It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver. *See* Rule 502(b).

Fed. R. Evid. 502 advisory committee's note to 2007 amendments. Generally, "subject matter waiver exists only in cases where a party deliberately discloses privileged information in an attempt to gain a tactical advantage." *GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2010 WL 5067688, at *6 (E.D. Ky. Dec. 7, 2010). Further, if a court determines waiver has occurred, the scope of the same should be construed narrowly. *Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 703 (E.D. Mich. 2021) (citing *Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 7021688, at *4 (E.D. Mich. Nov. 30, 2020)).

The Lewis Defendants urged the Court to conclude that the required elements of Fed. R. Evid. 502(a) are met and that Reynolds waived its privilege. (DN 40.) Reynolds argued the opposite as to application of Fed. R. Evid. 502(a) but also argued that the Court should conclude that there was a binding agreement by counsel for the Lewis Defendants not to argue waiver set

forth in the tendered e-mail correspondence discussed above or, in the alternative, should find that the disclosure was inadvertent. (DN 38.) The Court will address these two arguments first.

On the issue of whether an agreement between the Parties existed as to the disclosure at issue, Fed. R. Evid. 502(e) provides that "[a]n agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order." Fed. R. Evid. 502(e). As the Sixth Circuit has explained, "Parties may contract as to the 'effect of disclosure in a federal proceeding'—but that agreement 'is binding only on the parties to the agreement, unless it is incorporated into a court order.' " *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 527-28 (6th Cir. 2022) (quoting in part Fed. R. Evid. 502). Reynolds argued that because its counsel was clear that his client was only producing the EUO on the condition that no one argue waiver and the Lewis Defendants' counsel accepted the EUO, the Court should find there was an agreement between the Parties. (DN 38.) Based on the e-mail correspondence summarized by the Court above, the Court disagrees. While Reynolds's counsel was clear in his request, the Lewis Defendants' counsel rejected that condition and the two agreed to contact the undersigned for guidance. (Counsel for the Lewis Defendants: "Since I represent a party to this case who has an interest in this case, I believe I have a right to the entire EUO. . . . If you will not agree to forward the E[UO] unredacted, I will need to contact Judge Lindsay to set a conference to discuss the issue. Please advise if you will forward it unredacted or if I will need to contact Judge Lindsay.") It was only after Owners's counsel suggested the Lewis Defendants' counsel at least take a look at the redacted EUO before involving the Judge that the Lewis Defendants' counsel agreed to look at it. (Counsel for Owners: "I would suggest we provide you with the EUO, as redacted and approved by [Lowder], and see if that is satisfactory. If not, we will likely need to involve the Judge. Let me know your thoughts." Counsel for the Lewis Defendants:

11

"Ok – please send with redactions and I will take a look.")  The Lewis Defendants' counsel's last e-mail did not include an acceptance of Reynolds's counsel's condition, and given the sequence of events, the Court cannot fairly read the same as being implied.  If the condition was as important to Reynolds as it now suggests, it should have been clearer in its communication prior to producing the redacted EUO.  Further, no Party has produced evidence of any kind of formal contract or agreement on this issue.  Accordingly, the Court finds that the Parties did not reach an agreement on this issue prior to production of the EUO.

Reynolds also argued that to the extent the Court found there was no agreement, it should find that the disclosure of privileged material was inadvertent.  Fed. R. Evid. 502(b) provides that an inadvertent disclosure does not operate as a waiver where: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."  Fed. R. Evid. 502(b).  The most classic example of inadvertent disclosure is where a document that a party did not know was in there is mixed into either a physical or electronic production.  *See, e.g.*, *Boodram v. Coomes*, No. 1:12CV-00057-JHM, 2014 WL 12823642, at *1 (W.D. Ky. Nov. 20, 2014).  While the rule itself does not define inadvertent, courts have held that "any mistaken, or unintentional, production of privileged material is 'inadvertent.' "  *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, No. 5:12-CV-289-KSF-REW, 2013 WL 7800409, at *2 (E.D. Ky. Dec. 10, 2013) (quoting *Coburn Group, LLC v. Whitecap Advisors LLC,* 640 F.Supp.2d 1032, 1038 (N.D. Ill. 2009)).  With this definition in mind, the Court cannot find that the disclosure at issue was inadvertent.  Reynolds did not mistakenly mix the EUO into an otherwise intentionally produced pile of documents.  It deliberately disclosed the EUO with redactions and is proving to have been potentially mistaken about the effect of those redactions and/or its attempt to agree on that effect with opposing counsel.

While the Court need not—and does not—criticize counsel's decision to send the redacted EUO, this is clearly not a circumstance against which Fed. R. Evid. 502(b) was intended to guard. Accordingly, the Court finds that the disclosure of the EUO was not inadvertent.

This leaves the Court with the application of Fed. R. Evid. 502(a) to the redacted EUO. First, the Court notes that for this Rule to apply, there must have been a disclosure that constitutes a waiver. Fed. R. Evid. 502(a) (emphasis added) (governing the scope of any waiver "[w]hen the *disclosure is made* in a federal proceeding . . . and [the disclosure] *waives* the attorney-client privilege"). Here, the Court held that the entire EUO was protected by attorney-client privilege. Thus, the disclosure of the unredacted portions of the EUO to opposing counsel did constitute a waiver of privilege as to those portions. After all, "[a]s a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.' " *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting in part *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). Because this disclosure of the unredacted portions of the EUO constituted a waiver, the privilege is also waived as to the redacted portions of the EUO if the elements in Fed. R. Evid. 502(a)(1)-(3) are met.

As to whether the waiver was intentional under Fed. R. Evid. 502(a)(1), for the same reasons the Court found the disclosure was not inadvertent, the disclosure of the EUO by Reynolds was intentional. It chose to apply redactions and produce material that was otherwise privileged. Thus, subdivision (a) is met. As to whether the disclosed and undisclosed information concerns the same subject matter under Fed. R. Evid. 502(a)(2), the Court conducted an *in camera* review of the unredacted EUO and based on the same concludes that the redacted and unredacted material does concern the same subject matter. The entire EUO was about the underlying accident that

injured Sampson Lewis, i.e. how it happened and what Recktenwald did and observed. The redacted material relates to that same subject matter and in fact largely seems to be instances in which Recktenwald expounded on a simpler answer given in the nonredacted material about a particular issue. Of particular concern to the Court, it actually appears that Reynolds often redacted instances in which the testimony of Recktenwald was not as favorable on the issue of his comparative negligence as some of the unredacted testimony. This leads the Court to conclude as to Fed. R. Evid. 502(a)(3) that in fairness, the redacted and unredacted portions of the EUO should be considered together. As the comments to the rule explain, "the animating principle" of the "ought in fairness" language is that "a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Fed. R. Evid. 502 advisory committee's note to 2007 amendments. Based on its review of the redacted and unredacted portions of the EUO, the Court concludes that the redactions are selective and misleading. While Reynolds's point is well-taken that it is Owners, not Reynolds, seeking to use the EUO in this action, Reynolds was the one who chose what redactions to apply and whether to waive privilege. Thus, Reynolds was also using the redactions to the EUO as a sword to mount its defense in this action and control the flow of information to the Lewis Defendants. It is well-established that "[t]he attorney-client privilege cannot at once be used as a shield and a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (quoting *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)). Based on the foregoing, the Court concludes that all subdivisions of Fed. R. Evid. 502(a) are met and that Reynolds waived its attorney-client privilege as to the entire EUO by producing the redacted version of the EUO.[6] The Court will direct Reynolds to produce the unredacted version of the EUO to the Lewis Defendants on or before the deadline below.

---

[6] In doing so, the Court emphasizes that it is not finding any broader subject matter waiver than that the Lewis Defendants are entitled to the entire, unredacted EUO. This is an unusual case procedurally in terms of how the

### III. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1) The Lewis Defendants Motion to Compel Production of An Unredacted Copy of the Examination Under Oath of Matthew Recktenwald (DN 29) is **GRANTED**. Reynolds shall produce an unredacted copy of the EUO to the Lewis Defendants within **five days** of entry of the instant Memorandum Opinion and Order.

(2) As set forth in the Court's December 6, 2022, Order, the Lewis Defendants shall file their response to Plaintiff's Motion for Summary Judgment (DN 33) no later than **twenty-one days** from entry of the instant Memorandum Opinion and Order. (DN 36.) The deadline for any reply shall be governed by the Local Rules.

(3) While the Court will not reset the trial date at this time, the Pretrial Conference scheduled for June 6, 2023, at 1:30 PM is **REMANDED** and **RESET** for **June 27, 2023, at 3:30 PM ET** before District Judge Rebecca Grady Jennings. The Parties shall refer to the terms of the Court's September 26, 2022, Order (DN 28) for the applicable pretrial deadlines that will now run from the rescheduled pretrial conference date.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record
April 26, 2023

---

production of the document at issue arose and the fact that the dispute involved only one document as opposed to particular pieces of testimony. Thus, the Court cautions the Parties that if further discovery disputes arise, the instant ruling is limited only to subject matter waiver as to the redactions to the EUO and that the same is not determinative about how the Court might rule on other discovery disputes.